**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
    RITA DEVERS,

                            Plaintiff,

            -against-

    COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
-------------------------------------------------------------x

21-CV-5931 (OTW)

**OPINION & ORDER**

**ONA T. WANG, United States Magistrate Judge:**

I.     **Introduction**

On September 24, 2015, Plaintiff Rita Devers filed an application for Title II Social Security Disability Insurance Benefits, alleging disability beginning March 2, 2013. (ECF 23 at 15, 58) (SSA Administrative Record, hereinafter "R."). On October 27, 2015, Plaintiff's application was denied after an initial review. (R. 64-67). On November 12, 2015, Plaintiff requested a hearing before Administrative Law Judge ("ALJ") Elana Hollo. (R. 15). On March 9, 2018, a video hearing was held before ALJ Hollo. (R. 15). By written decision dated March 22, 2018, ALJ Hollo found that Plaintiff was not disabled under the Social Security Act ("SSA") (R. 15-25). On April 10, 2019, Plaintiff appealed to the Appeals Council (R. 509), which denied the review of ALJ Hollo's decision on March 22, 2018. (R. 1-8). On or about July 13, 2020, the case was remanded to the Appeals Council from the Southern District of New York. (R. 423-25). On August 22, 2020,

1

the Appeals Council remanded this case to ALJ Hollo pursuant to the remand order from the U.S. District Court for the Southern District of New York. (R. 426-33).

On November 30, 2020, ALJ Selwyn Walters presided over a telephonic hearing. (R. 383). On March 17, 2021, ALJ Walters issued a decision denying Plaintiff's claim. (R. 383-96). ALJ Walters found that Plaintiff was not disabled as of the date last insured of December 31, 2014. (R. 386). ALJ Walters's decision is the Commissioner's final decision, reviewable by this Court. 20 C.F.R. § 404.984 ("the decision of the administrative law judge or administrative appeals judge becomes the final decision of the Commissioner after remand").

For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**, the Commissioner's Cross Motion for Judgment on the Pleadings is **DENIED**, and the decision of the Commissioner of Social Security is remanded for further proceedings pursuant to 42 U.S.C. § 405(g).

**II.     Background**

A.  *Plaintiff's Medical History*

Plaintiff, born in 1952, was 62 years old at the onset of her alleged disability. (R. 406). Plaintiff's highest level of education was completion of the 8th grade in the Dominican Republic. (R. 40). Plaintiff was working as a hand packager until 2010 when the company closed because of bankruptcy. (R. 28, 39). On October 27, 2014, Plaintiff saw Dr. Estefan for depression. (R. 1269). Plaintiff's had multiple conditions noted in her medical history including "major depressive disorder," "recurrent episode," "moderate," and "anxiety disorder." (R. 1270). On November 4, 2014, February 23, 2015, and March 26, 2015, Plaintiff was treated by Candida Cartagena, a therapist supervised by Dr. Taveras. (R. 1272, 1284, 1290). Mrs. Cartagena

diagnosed Plaintiff with "major depressive disorder," "recurrent episode," "moderate," and "anxiety disorder." (R. 1273, 1285, 1286, 1290, 1291). On November 10, November 24, and December 5, 2014, Plaintiff was treated by Dr. Estefan. (R. 1274-1280). Upon mental status examination, Plaintiff had no gross abnormalities. (R. 1274, 1277, 1279). On February 13, March 13, 2015, Plaintiff was treated by Dr. Estefan, and Plaintiff had no gross abnormalities based on her mental status examination and presented no signs of depression. (R. 1282, 1287). On April 14, 2015, Plaintiff was treated with Dr. Estefan, and Dr. Estefan diagnosed Plaintiff with "major depressive disorder," "recurrent episode," "moderate," and "anxiety disorder." (R. 1293). From 2015, Dr. Estefan and Ms. Cartagena assessed Plaintiff had no gross abnormalities and showed no signs of anxiety or attentional difficulties. (R. 1297, 1300, 1302, 1303, 1304, 1307, 1309, 1312). Plaintiff continued to report improvement, except to have some mood swings when she thought about her dead son. (R. 1295, 1297, 1300, 1304, 1306, 1307).

    B.   <u>*Treatment with Dr. Bebsy Estefan*</u>

On November 16, 2015, Dr. Estefan, Plaintiff's treating psychiatrist, submitted a "Medical Source Statement." (R. 368-72). Dr. Estefan found that Plaintiff had a marked loss in her ability to: "carry out detailed instructions," "maintain attention and concentration for extended periods," "maintain regular attendance, be punctual," "sustain an ordinary routine without special supervision," "deal with the stress of semi-skilled and skilled work," "work in coordination with or proximity to others without being unduly distracted," "make simple work related decisions," "complete a normal workweek without interruptions from psychologically based symptoms," "perform at a consistent pace without an unreasonable number and length of rest periods," "respond appropriately to changes in a routine work setting," and "set realistic

3

goals or make plans independently of others." (R. 369-70). Dr. Estefan further found that Plaintiff had marked restrictions on activities of daily living. (R. 371). In Dr. Estefan's opinion, Plaintiff's condition has existed and persisted with the restrictions as outlined in this Medical Source Statement since at least 2014. (R. 372).

### C. *Treatment with Psychiatrist Dr. Yvanka Pachas*

On October 24, 2017, Dr. Yvanka Pachas, Plaintiff's treating psychiatrist, submitted a "Medical Source Statement." (R. 373-76). Dr. Pachas found that Plaintiff had a marked loss of her abilities to: "remember locations and work-like procedures," "carry out detailed instructions," "maintain attention and concentration for extended periods," "maintain regular attendance, be punctual," "sustain an ordinary routine without special supervision," "deal with the stress of semi-skilled and skilled work," "work in coordination with or proximity to others without being unduly distracted," "make simple work related decisions," "complete a normal workweek without interruptions from psychologically based symptoms," and had an "extreme loss limitation of her ability to perform at a consistent pace without an unreasonable number and length of rest periods." (R. 375).

Dr. Pachas further found that Plaintiff had a marked loss of her abilities to: "respond appropriately to changes in a routine work setting," "travel in unfamiliar places," "use public transportation," and "set realistic goals or make plans independently of others." (R. 375). Dr. Pachas additionally found Plaintiff would have marked restrictions of activities of daily living, moderate difficulties in maintaining social functioning, frequent deficiencies of concentration, persistence or pace resulting in a failure to complete tasks in a timely manner (in work settings or elsewhere), and repeated episodes of deterioration or decompensation in work or work-like

settings. (R. 376). In Dr. Pachas' opinion, Plaintiff's condition has existed and persisted with the restrictions as outlined in this Medical Source Statement at least since 2014. (R. 376).

### D. Physical Treatments with Dr. Jacqueline Carreno, Dr. David Fleiss, Dr. Ali Aktar, and Dr. Miranda

On September 28, 2015, Plaintiff was treated by Dr. Jacqueline Carreno. (R. 310). Dr. Carreno diagnosed Plaintiff with "hyperlipidemia, HTN, osteoarthritis generalized, varicose veins, NOS, and abdominal pain." (R. 309-10). On October 20, 28, 29, 2015; November 2, 4, 6, 10, 12, 17, 18, 23, 24, 25, 2015; and December 1, 2, 3, 7, 2015; Plaintiff presented to New York Neuro & Rehab Center for physical therapy with pain and stiffness in the low back area and the knees. (R. 1082-1102, 1105-1106). Plaintiff was diagnosed with "crepitus on the knees with flexion and extension," and "positive grade 1 tenderness on the lower back." (R. 1082-1102, 1105-1106).

On September 1, 2016, Plaintiff received physical therapy treatment at Jerome Family Health Center for pain and stiffness in the low back area and osteoarthritis of the left knee. (R. 1079). On September 8, 13, 14, 15, 20, 28, 29, 2016, Plaintiff received physical therapy treatments at Jerome Family Health Center for complaints of pain and stiffness in the lower back. (R. 1068, 1073-1078). On September 21, 22, 2016, and October 4, 5, 6, 11, 12, 13, 18, 20, 2016, Plaintiff received physical therapy treatments for complaints of pain in her lower back and on both shoulders. (R. 1059-1067, 1071).

On April 5, 2017, Plaintiff was treated by Dr. David Fleiss for a follow-up of right wrist pain. (R. 645). Plaintiff's examination indicated "chronic bilateral chronic carpal tunnel syndrome." (R. 645-46). On April 18, 2017, Plaintiff underwent right carpal tunnel release surgery. (R. 331-32). Dr. Fleiss found that Plaintiff had carpal tunnel syndrome in her right hand.

(R. 335). According to the assessment, Plaintiff was able to perform care for her personal needs with difficulty. (R. 335). Plaintiff had mild atrophy in her thenar surface. (R. 336). Plaintiff's grip strength was "4/5 in the right hand." (R. 336). Plaintiff's right upper extremity moderately to severely interfered with fine, dexterous, and gross movements. (R. 337).

On May 2, 2017, Plaintiff was treated by Dr. Ali Aktar for right wrist, right shoulder, and low back pain. (R. 689). Plaintiff was medically cleared for right stellate ganglion and right lumbar sympathetic blocks. (R. 690). On May 4, 2017, Plaintiff underwent a lumbar sympathetic block. (R. 333-34). Plaintiff had severe pain in her right lumbar region radiating to the right thigh, right hip, and the right leg with discoloration of the right foot, and she was diagnosed with sympathetic medicated pain. (R. 333-34). On May 22, 2017, Plaintiff underwent a right stellate ganglion injection. (R. 713).

On June 14, 2017, Plaintiff treated with Dr. Miranda. (R. 399). Plaintiff reported that there was a worsening of lower extremity pain, heaviness, and burning. (R. 339). Dr. Miranda assessed Plaintiff had "snoring, obstructive sleep apnea, COPD, moderate, and venous (peripheral) insufficiency." (R. 339-40). On June 29, 2017, Plaintiff underwent pulmonary function testing at New York Cardiovascular Associates. (R. 567-68). Dr. Miranda found "moderate obstructive-restrictive airway impairment" with severe diffusing effect suggestive of interstitial lung disease. (R. 567).

E. *ALJ Walters's Decision*

ALJ Walters applied a five-step analysis and concluded that Plaintiff was not disabled under the SSA. (R. 15). ALJ Walters found that Plaintiff's severe impairments include: bilateral knees degenerative joint disease, recurrent mycotic toenails, and chronic obstructive

pulmonary disease ("COPD"). (R. 386). ALJ Walters found that Plaintiff's gastroesophageal reflux disease, hypertension, sleep apnea, major depressive disorder, and anxiety disorder were non-severe impairments. (R. 386). ALJ Walters found that Plaintiff had the Residual Functional Capacity ("RFC") to perform medium work except she was limited to occasionally climbing ramps and stairs, but could not climb ladders, ropes, or scaffolds. (R. 388). ALJ Walters further found that Plaintiff could perform her past relevant work based on her RFC and the testimony of the Vocational Expert ("VE"). (R. 390).

### III. Analysis

#### A. Applicable Law

**1. Standard of Review**

A motion for judgment on the pleadings should be granted if the pleadings make it clear that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 12(c). However, a court's review of the commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the commissioner and whether the correct legal standards were applied. 42 U.S.C.A. § 405(g). Substantial evidence is more than a mere scintilla but requires the existence of "relevant evidence as a reasonable mind might accept as adequate to support a conclusion," even if there exists contrary evidence. *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (same). This is a "very deferential standard of review." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The Court may not determine *de novo* whether Plaintiff is disabled but must accept the ALJ's findings unless "a reasonable factfinder would have to conclude otherwise." *Id*.

**2. Determination of Disability**

To be awarded disability benefits, the SSA requires that one have the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a). An ALJ makes this determination through a five-step evaluation process, where the burden rests on the plaintiff for the first four steps and only after all four steps are satisfied does the burden then shift to the commissioner for the final step. 20 C.F.R. § 416.920.

First, an ALJ must determine that the plaintiff is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4). Second, an ALJ must find that the plaintiff's impairment is so severe that it limits her ability to perform basic work activities. *Id*. Third, an ALJ must evaluate whether the plaintiff's impairment falls under one of the Listings, such that she may be presumed to be disabled. Absent that, an ALJ must then determine the claimant's RFC, or her ability to perform physical and mental work activities on a sustained basis. *Id*. Fourth, an ALJ then evaluates if the plaintiff's RFC precludes her from meeting the physical and mental demands of her prior employment. *Id*. If the plaintiff has satisfied all four of these steps, the burden then shifts to the commissioner to prove that based on the plaintiff's RFC, age, education, and past work experience, the plaintiff is capable of performing some other work that exists in the national economy. *Id.*

B.  Analysis of ALJ Walters's Decision

Plaintiff rests her appeal upon four issues with ALJ Walters's decision. Plaintiff claims that ALJ Walters failed to: (1) properly evaluate her mental impairments; (2) properly evaluate her physical impairments; (3) properly evaluate her subjective statements; and (4) consider her monthly absences. (ECF 23 at 25) (Joint Stipulation, hereinafter "Stip."). I find that ALJ Walters: (1) failed to properly evaluate her mental impairments; (2) did properly evaluate her physical impairments; (3) did properly evaluate her subjective statements; and, (4) did not consider her monthly absences.

**1. ALJ Walters Failed to Properly Evaluate Plaintiff's Mental Impairments.**

Plaintiff contends that ALJ Walters's erred in finding that she did not suffer from any mental impairment and ALJ Walters gave little weight to two mental assessments from Plaintiff's treating psychiatrists. (Stip. at 25). In assessing a claimant's mental RFC, an ALJ must make findings regarding the claimant's ability to perform basic work-related activities pursuant to Social Security Ruling ("SSR") 96-8p. Here, ALJ Walters failed to properly assess the treating physician's opinion according to the treating physician rule. The treating physician rule instructs an ALJ to give controlling weight to the opinion of the claimant's treating physician, as long as the opinion is well-supported by medical findings and is not inconsistent with the other evidence in the record. 20 C.F.R. § 404.1527(c)(2). *See also Burgess v. Astrue,* 537 F.3d 117,128 (2d Cir. 2008); *Calzada v. Astrue,* 753 F. Supp.2d 250, 276 (S.D.N.Y. 2010).

ALJ Walters gave little weight to the treating opinions of Dr. Estefan and Dr. Pachas, Plaintiff's main treating physicians. (R. 387). Both opinions found that Plaintiff's mental impairments would prevent her from performing full time work as far back as 2014. An ALJ is

9

not free to set their own expertise against that of a physician who testified before them. *Balsamo v. Chater,* 142 F.3d 75, 81 (2d. Cir. 1998) (*citing McBrayer v. Secretary of Health and Human Services*, 712 F.2d 795, 799 (2d Cir. 1983). ALJ Walters found that Plaintiff's depression and anxiety were not severe because they caused no limitations whatsoever in the broad areas of functioning: understand, remember or apply information; interact with others; concentrate, persist or maintain pace; and adapt and manage oneself. (R. 387). Without showing deference to treating physician's assessments, ALJ Walters improperly relied on his own lay opinion.

Furthermore, the treating physicians' assessments are well-supported by medical findings and consistent with the other evidence in the record. ALJ Walters found that both treating physician's opinions were inconsistent with the Plaintiff's normal non-exertional activities of daily living, lack of mental health treatment until over a year and a half after the alleged onset date, and substantial improvement with no further complaints within only two months after starting treatment. (R. 388).

Regarding Plaintiff's daily activities, Plaintiff could only perform on a limited basis and this does not undermine Plaintiff's claim that she cannot work on a full-time basis. *Morgan v. Comm'r of Soc. Sec.,* No. 18-CV-2880, 2020 WL 3414696, at*6 (E.D.N.Y. June 22, 2020) (finding evidence that claimant could perform some activities of daily living not inconsistent with the finding of disability since an individual "need not be invalid to be found disabled"). With regard to Plaintiff's improvements, both physicians found that Plaintiff had improvements over time. On February 13 and March 13, 2015, Dr. Estefan found that Plaintiff had no gross abnormalities based on her mental status examination and presented no signs of depression. (R. 1282, 1287). Two months later, Dr. Estefan diagnosed Plaintiff with "major depressive disorder," "recurrent

episode," "moderate," and "anxiety disorder." (R. 1293). From 2015, Dr. Estefan and Ms. Cartagena assessed Plaintiff had no gross abnormalities and showed no signs of anxiety or attentional difficulties. (R. 1297, 1300, 1302, 1303, 1304, 1307, 1309, 1312). The Commissioner claims that ALJ Walters properly accorded little weight to the doctors' retrospective opinions based upon a lack of objective support in the treatment record. (Stip. at 35). However, the Court does not find the treating physician's opinion clearly contradictory to the evidence in the treatment record.

   2. **ALJ Walters Properly Evaluated Plaintiff's Physical Impairments.**

Plaintiff has the burden to present medical evidence of a medically determinable impairment that could reasonably be expected to produce her alleged back, hand, and arm pain. 42 U.S.C. § 423(d)(5)(A) ("there must be medical signs and findings, established medically acceptable clinical and laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged").

ALJ Walters properly found that Plaintiff's sleep apnea, including her reported symptoms of difficulty falling and staying asleep at night and sleepiness during the day, were not severe because the only report in the record from the relevant period was inconclusive, and Plaintiff sought no further treatment for the rest of the relevant period. (R. 386). ALJ Walters also properly found that Plaintiff did not have a severe impairment related to her complaints of pain in her back, arms, or hands. (R. 386). Plaintiff claims that she suffered from osteopenia, spider and varicose veins, shoulder pain, and spur formation. (Stip. at 43). Plaintiff's physical treatment record shows that she had impairment on her back, arms, and hands, however,

these diagnoses do not establish that her impairment is severe. *Barreto v. Comm'r of Soc. Sec.*, 20-cv-6162, 2022 WL 991838, at*10 (S.D.N.Y. Mar. 31, 2022) (finding the mere presence of a disease or impairment is not sufficient to render it severe).

   3. **ALJ Walters Did Not Consider Plaintiff's Monthly Absences when Evaluating her RFC.**

ALJ Walters erred in his determination of Plaintiff's RFC. ALJ Walters found Plaintiff disabled based on the assessments of the treating psychiatrists and the testimony of the VE. VE DiTrinco testified that "if a person was 15% off task, it would be work preclusive" (R. 41) and that only nine absences a year would be permitted, but more than that would be work preclusive. (R. 42). Both of the treating psychiatrists opined that because of her impairments, Plaintiff would be absent more than three times a month. (R. 369, 374). Here, ALJ Walters failed to consider or address how many absences Plaintiff would have per month and how often Plaintiff would be off task. *See Guzman v. Commissioner of Social Security*, No. 20-cv-07420, 2022 WL 2325908, at *21 (S.D.N.Y. June 10, 2022) (finding an ALJ erred by failing to address the issue of how much time Plaintiff would miss in a month based on his ailments). Based on VE's testimony, Plaintiff does not have the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c).

   4. **ALJ Walters Properly Evaluated Plaintiff's Subjective Statements.**

In evaluating subjective symptoms, a claimant must first demonstrate the existence of a medically determinable impairment that could reasonably be expected to produce the symptoms. 20 C.F.R. § 416.929(c)(2). After such an impairment has been identified, the intensity and persistence of the claimant's symptoms are evaluated based on all available evidence. *Id.*

Here, ALJ Walters properly evaluated Plaintiff's subjective statements regarding the intensity, persistence, and limiting effects of her symptoms, and concluded after extensive analysis that they were inconsistent with the evidence in the record. (R. 20-25). Plaintiff claims that ALJ Walters did not specify which statements he was referring to and why these statements were "not entirely consistent with the medical evidence." (Stip. at 54). However, ALJ Walters properly addressed, in relation to the objective and non-medical evidence, Plaintiff's allegations that: she had difficulty sleeping, caring for her hair, lifting more than seven pounds, standing, walking, sitting, and climbing stairs; she needed assistance to grocery shop and perform household chores; and, she could not kneel or squat. (R. 386, 389-91). ALJ Walters found that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision." (R. 389). ALJ Walters carefully considered objective medical evidence, including diagnostic testing, objective clinical findings, Plaintiff's treatment and medical history, and other evidence like Plaintiff's daily activities, and decided that Plaintiff's statement was inconsistent with her medical record. (R. 390).

IV.  **Conclusion**

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**, the Commissioner's Cross Motion for Judgment on the Pleadings is **DENIED**, and the decision of the Commissioner of Social Security is remanded for further proceedings pursuant to 42 U.S.C. § 405(g).

**SO ORDERED.**

Dated: March 31, 2023
New York, New York

_s/ Ona T. Wang_
**Ona T. Wang**
United States Magistrate Judge